SENTENCIA
I
El presente caso exige que determinemos si procede modificar las cuantías concedidas por el tribunal sentenciador como indemnización por los daños causados a la parte recurrida. Igualmente, debemos considerar si procede la defensa de negligencia comparada presentada por la parte peticionaria.
El caso de autos se inició en abril de 1988 con la presentación de la demanda de epígrafe. Mediante ésta, se reclamó una indemnización por los daños y peijuicios causados como resultado del intercambio de unas gemelas. Como consecuencia del intercambio, cada padre recibió una hija biológica y otra niña perteneciente a distintos progenitores. A continuación, exponemos los hechos pertinentes a la controversia.
El 3 de septiembre de 1985 nació en el Hospital Universitario del Centro Médico un par de gemelas llamadas Tairí Mari y Mari Tairí. Las niñas eran hijas del matrimonio compuesto por Dulce María Hernández y Juan Ramón de León (matrimonio de León Hernández). Luego del alumbramiento, las hermanas gemelas pasaron a la guardería del hospital. Al día siguiente, Dulce observó los bebés y no notó nada particular. Posteriormente, Dulce fue dada de *395 alta, pero las niñas permanecieron en el hospital unos días más.
El 6 de septiembre de 1985 el matrimonio de León Hernández recogió sus hijas en el hospital. En ese momento, Dulce observó que las niñas no se parecían, aun cuando le habían dicho que eran gemelas idénticas. La enfermera le indicó lo siguiente: “los niños cambian de un día para otro; esas son tus nenas. Se ve que eres primeriza”. Moción en cumplimiento de orden de mostrar causa por la cual debe expedirse auto de certiorari, pág. 2. Confiando en la experiencia del personal del hospital, Juan y Dulce se llevaron a las niñas a su hogar.
Por otra parte, el 4 de septiembre de 1985, en el mismo hospital, la Sra. Rosaura Hernández Morales dio a luz a un par de hermanas gemelas. Las niñas eran hijas de la señora Hernández y del Sr. Edward Rosa Santos, con quien ésta mantenía una relación consensual. A las niñas se les llamó Samantha y Jennifer. Una vez nacieron fueron trasladadas a la guardería del hospital. Las gemelas Samantha y Jennifer también reflejaban características distintas. Posteriormente, fueron dadas de alta y se trasladaron al hogar materno en el Residencial Jardines de Guaynabo. Allí discurrió la vida de las niñas junto a sus otros hermanos hasta que tuvieron 1 año y 7 meses de edad.
El 10 de abril de 1987 una hermana de Dulce, Gloria Hernández Ramos, se encontraba en un dispensario médico en Guaynabo con una de sus sobrinas menor de edad. Esta menor le indicó que en dicho lugar se encontraba una de las sobrinas gemelas, la que llamaban Mari Tairí. Ante la insistencia de la niña, Gloria miró hacia donde estaba la otra niña y observó que entre ésta y su sobrina Mari Tairí había un enorme parecido. La niña que Gloria vio estaba acompañada de su madre, Rosaura, con la cual habló. Gloria acompañó a Rosaura a su casa y llamó a su hermana Dulce para informar lo que había observado. Ese mismo día, Dulce acudió con su hija a casa de Rosaura y se suscitó *396 una escena conmovedora entre las gemelas y los adultos allí presentes. A solicitud de Gloria, Rosaura accedió a someterse a unas pruebas clínicas para confirmar lo que era evidente, que las niñas habían sido intercambiadas. Los resultados de los estudios médicos así lo comprobaron.
En un principio, los padres propiciaron encuentros entre las niñas para que confraternizaran. No obstante, conforme al consejo profesional que recibieron, dichos encuentros se hicieron cada vez más esporádicos, hasta que cesaron y se dio el intercambio final. El Tribunal de Primera Instancia, concluyó que la adaptación de las niñas a su nuevo hogar, una vez fueron integradas en el núcleo de sus respectivas familias biológicas, fue muy difícil. Las niñas lloraban, peleaban, y preguntaban continuamente por la hermanita que estaba con la otra familia.
Una vez presentada la demanda y tras llevarse a cabo un proceso de descubrimiento de prueba, la Asociación de Garantía de Seguros Misceláneos, en interés de la Universidad de Puerto Rico, admitió negligencia en el caso de autos. Luego de celebrarse un juicio en su fondo, el Tribunal de Primera Instancia dictó sentencia condenando a las peticionarias y demandadas al pago de $1,645,000.
En la sentencia dictada, el tribunal indicó que todos los demandantes fueron evaluados por profesionales en la conducta humana y salud mental. Relató minuciosamente las conclusiones de los médicos sobre el estado emocional de los demandantes, adoptando como conclusiones de hechos del tribunal las observaciones de los trabajadores de la salud.
A modo de ejemplo, adoptó la conclusión de la Dra. Amarilys Muñoz que atendió a Rosaura, de que esta última atravesaba, a la fecha del juicio, una reactivación del síndrome de estrés pos traumático al punto que mostraba signos de una depresión aguda. Determinación Núm. 35. Tan es así, que no pudo testificar durante el juicio y se tuvo que admitir el testimonio presentado por ésta en ocasión de *397 su deposición. La doctora Muñoz testificó que de Rosaura haber presentado testimonio, su depresión se agudizaría aún más, colocándola en riesgo de sufrir una sicosis. El foro primario concluyó que a la fecha del juicio era evidente todavía la grave carga emocional que este incidente supuso para las niñas, sus padres, los respectivos abuelos y demás familiares.
Los demandados apelaron la sentencia y el Tribunal de Apelaciones confirmó el dictamen apelado.
Inconformes aún, los demandados acudieron ante este Tribunal. En su escrito señalaron la comisión de los errores siguientes:
Erró claramente el Tribunal de Apelaciones al confirmar la sentencia del [Tribunal de Primera Instancia] que concedió a la parte demandante cuantías exageradamente altas no justificadas por la prueba desfilada ni por los criterios de fijación de daños establecidos por la doctrina del Tribunal Supremo de Puerto Rico y descartar el análisis comparativo para valorar los daños de los demandantes.
Erró el Tribunal de Apelaciones al descartar aplicar la doctrina de negligencia comparada que debe reducir la compensación que deben recibir en este caso algunos de los demandantes. Petición de certiorari, pág. 12.
Nos negamos a expedir el auto. Presentada la solicitud de reconsideración, nos negamos a reconsiderar. El 7 de marzo de 2008, luego de una segunda moción de reconsideración, reconsideramos y emitimos una orden para mostrar causa por la cual no debíamos expedir el auto y dictar sentencia modificando la dictada por el Tribunal de Apelaciones para reducir las cuantías concedidas a la parte demandante y recurrida por daños y perjuicios. Pasamos a resolver.
II
La estimación y valorización de daños en nuestro ordenamiento es una tarea angustiosa, para la cual no existen *398 fórmulas matemáticas o científicas que nos indiquen cómo se justiprecia el dolor y el sufrimiento. En nuestro ordenamiento, la finalidad de la reparación del daño es resarcitoria, no punitiva. S.L.G. Rodríguez v. Nationwide, 156 D.P.R. 614 (2002). No hay duda que en la objetivación de los daños siempre estará presente un grado de especulación. La razonabilidad, no obstante, es el elemento que siempre debe acompañar al juez a la hora de estimar y valorar los daños que ha sufrido una parte.
Si difícil y ardua es la labor para el juez de instancia, mucho más lo será para el magistrado que interviene en alzada, y quien sólo tiene ante sí un gélido y distante expediente. Por esta razón, este Tribunal se abstendrá de intervenir con la apreciación de la prueba y la determinación de daños que un foro de instancia haya emitido. Albino v. Ángel Martínez, Inc., 171 D.P.R. 457 (2007); S.L.G. Rodríguez v. Nationwide, supra. Así pues, en deferencia a los foros de instancia, los tribunales apelativos solamente tienen la facultad de modificar las cuantías concedidas en aquellos casos en que éstas “sean ridiculamente bajas o exageradamente altas”. Id., pág. 623.
Y es que así debe ser, pues como hemos advertido reiteradamente, las determinaciones de hecho de los foros inferiores merecen gran deferencia por los foros apelativos. Flores v. Soc. de Gananciales, 146 D.P.R. 45 (1998); Monllor v. Soc. de Gananciales, 138 D.P.R. 600 (1995). Como sabemos, la apreciación de la prueba efectuada por el foro sentenciador goza de respeto y deferencia. Mun. de Ponce v. A.C. et al., 153 D.P.R. 1 (2000); Trinidad v. Chade, 153 D.P.R. 280 (2001). El tribunal de primera instancia es el foro ante el cual declaran los testigos y el magistrado que preside tiene la oportunidad de apreciar su comportamiento, de escuchar el testimonio, interpretar sus matices, observar el dolor humano y aquilatarlo y, finalmente, adjudicar credibilidad.
*399 La parte que solicita la modificación de la indemnización concedida por el foro de instancia, deberá demostrar que en efecto existen circunstancias que así lo justifican. Albino v. Ángel Martínez, Inc., supra. En este sentido, la mera alegación sobre la improcedencia de las compensaciones concedidas es insuficiente para que los foros apelativos las modifiquen. Id. Es decir, sólo cuando se nos acredite que la cuantificación de los daños es irrazonable procederemos a revisarla; de lo contrario, reiteramos la norma de abstención judicial para intervenir con la apreciación de la prueba que hizo el foro de instancia en ausencia de pasión, prejuicio, error manifiesto o parcialidad.
Por otro lado, y como sabemos, prima en nuestro ordenamiento jurídico la doctrina de negligencia comparada. Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996). Conforme a ésta, la negligencia concurrente o contribuyente del demandante sirve para mitigar, atenuar o reducir la responsabilidad pecuniaria del demandado, pero no para eximirle totalmente de responsabilidad. Esta norma tiende a individualizar las indemnizaciones por daño, colocando el rigor económico en las partes conforme a la proporción de su descuido y negligencia.
III
En el presente caso, la parte peticionaria aduce que las cuantías concedidas a la parte recurrida son excesivamente altas en comparación con algunas otras que han sido provistas en casos que, según ella, son similares al de autos. Igualmente, arguye que procede la modificación de las cuantías, ya que ninguno de los demandantes y recurridos sufre una condición de incapacidad parcial o permanente que justifique la concesión de la indemnización otorgada. Estamos en total desacuerdo.
*400 Del expediente surge que la parte demandante y recurrida presentó prueba testifical y pericial que nunca fue contradicha. De hecho, de la sentencia del tribunal de instancia podemos colegir que dicho foro descansó en la prueba desfilada y ejerció un sano juicio al cuantificar los daños reclamados. Vastas son las determinaciones que el foro sentenciador hizo a tales efectos. Así, por ejemplo, el tribunal consignó:
Al apreciar los testimonios en corte [,] resulta patente que este suceso tan desgraciado ha afectado profundamente a todos los demandantes [,] quedando sus vidas marcadas por ello. Según lo descubrió Gloria [tía]: “se volvieron todos como locos”. Determinación Núm. 16, Apéndice, pág. 407.
Del expediente surge que todos los demandantes fueron evaluados por profesionales de la salud mental. Según las determinaciones del foro sentenciador, “[l]os testimonios de los peritos de la parte demandante corroboran lo que el Tribunal pudo percibir de los testimonios vertidos en corte por los demandantes”. La sola lectura de las determinaciones de instancia refleja que, hoy por hoy, los demandantes y recurridos padecen de sentimientos de culpa, tristeza, ansiedad y trastornos depresivos. Incluso, a pesar de que el tratamiento de cada cual puede variar en intensidad y duración, en ninguno de los casos se recomienda que sea por un período menor de 6 meses. Véase Determinación Núm. 44, Apéndice, pág. 411. Más allá de esto, dichos tratamientos tampoco garantizan la curación total. Véase Determinación Núm. 51, Apéndice, pág. 412. El costo de los tratamientos alegadamente asciende a $649,500. Véase Determinación Núm. 52, Apéndice, pág. 413.
En vista de lo anterior, no podemos concurrir con la parte peticionaria en que los daños sufridos no justifican la concesión de la indemnización provista por el foro de instancia. Ciertamente, a la luz de la prueba desfilada, los daños causados a los demandantes y recurridos son indiscutibles. En efecto, entendemos que la cuantía conce *401 dida a los demandantes y recurridos resulta a todas luces razonable y no debe ser modificada, ya que las peticionarias ni siquiera han presentado prueba alguna que demuestre prejuicio, parcialidad, pasión o error manifiesto en la adjudicación y valoración de los daños.
Por otro lado, la parte peticionaria arguye que erró el Tribunal de Apelaciones al confirmar al foro de instancia en su valoración de daños sin hacer un análisis comparativo de las cuantías concedidas en otros casos por este Tribunal. Entendemos, no obstante, que el argumento es improcedente.
De la sentencia del Tribunal de Apelaciones surge que dicho foro tomó en consideración la referida alegación. No obstante, dado el hecho de que en nuestra jurisdicción no existía un caso similar al de autos, concluyó que los casos citados por la parte peticionaria no constituían un precedente obligatorio.([1]) Señaló que la valoración de daños efectuada por instancia se fundamentó estrictamente en la prueba desfilada ante dicho foro y que la determinación final a tales efectos fue producto del análisis ponderado de los hechos particulares del caso de autos. A nuestro entender, actuó correctamente el foro apelativo al resolver así. Nada de lo expresado al respecto en el recurso ante nuestra consideración nos persuade de lo contrario.
En su segundo señalamiento de error, la parte peticionaria aduce que el Tribunal de Apelaciones debió reducir la cuantía concedida, a la luz de la doctrina de negligencia comparada.
En su recurso, la parte peticionaria entiende que se les debe atribuir a los padres de las gemelas un porciento de negligencia. Arguyen que los padres de las gemelas aceptaron llevárselas a su hogar, aun cuando las niñas presentaban distintos rasgos físicos y a pesar de habérsele indicado que éstas serían gemelas idénticas. Aducen que al hacer esto, contribuyeron negligentemente a la ocurrencia *402 del daño. De hecho, sostienen que “[fueron] los padres y familiares de las gemelas quienes observaron el desarrollo de las niñas de cerca y por lo tanto [los] que tenían la obligación de hacer algo para verificar la identidad de las niñas. No hicieron nada, por lo que no pueden ahora beneficiarse de su propia omisión”. Véase Petición de certiorari, pág. 30. No estamos de acuerdo con esta aseveración.
Concurrimos con el foro apelativo en que el deber de entregar los bebés correctos a sus respectivas familias reside enteramente en el personal del hospital. Además, de los hechos surge que Dulce inquirió sobre la diferencia entre las niñas y que la enfermera del hospital le aseguró que aquéllas eran sus hijas. Aclaradas sus dudas iniciales, y confiando en el profesionalismo y experiencia del personal hospitalario, los padres no tenían deber ni motivo alguno para indagar sobre la identidad de sus hijas. De hecho, del expediente surge que Juan Ramón se había atribuido alguna de las características físicas de la niña, “por el ex-traordinario parecido entre ambos”, lo que demuestra que, hasta el momento del reencuentro, los padres no sospechaban del intercambio. Véase Determinación Núm. 15 del Tribunal de Primera Instancia, Apéndice, pág. 407. En efecto, entendemos que los padres no deben responder en modo alguno y la contención de la parte peticionaria es inmeritoria.
Por las razones que anteceden, se expide el auto y se dicta sentencia confirmando la dictada por el Tribunal de Apelaciones.
Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo.
El Juez Asociado Señor Rebollo López disintió con una opinión escrita.
(Fdo.) Aida Ileana Oquendo Graulau

Secretaria del Tribunal Supremo

(1) Véase, por ejemplo, Toro Aponte v. E.L.A., 142 D.P.R. 464, 478 (1997).