*403 Opinión disidente emitida por el
Juez Asociado Señor Rebollo López.
El 7 de marzo de 2008 una Sala Especial![1]) concedió un término a la parte demandante recurrida para que mostrara causa por la cual no se debía expedir el auto de certiorari presentado y dictarse sentencia “modificatoria de la emitida en el presente caso ... a los efectos de reducir las cuantías concedidas a la parte demandante recurrida por concepto de daños y perjuicios”. (Enfasis suplido.)
Hoy una mayoría de los integrantes de la referida Sala Especial confirma la sentencia recurrida. Disentimos; veamos por qué.
I
El recurso de autos tiene su origen en dos demandas interpuestas durante 1988 ante la Sala de San Juan del Tribunal de Primera Instancia, en las cuales se reclamó una indemnización por daños y perjuicios que le fueron ocasionados a dos pares de hermanas gemelas, a sus padres, abuelos y tíos, por el hecho de que éstas fueron intercambiadas, luego de nacer, en el Hospital Universitario de Puerto Rico. Exponemos los hechos pertinentes a la controversia.
El 3 de septiembre de 1985 nacieron en el Hospital Universitario del Centro Médico unas gemelas llamadas Tairí Mari y Mari Tairí. Las niñas fueron producto del matrimonio entre Dulce María Hernández y Juan Ramón de León. Como era la costumbre con todos los recién nacidos, las her *404 manas gemelas fueron trasladadas a la guardería del Hospital. Al día siguiente de su alumbramiento, la señora Hernández de León vio a las niñas. Posteriormente, ésta fue dada de alta, pero se le indicó que las niñas le serían entregadas más tarde. El 6 de septiembre de 1985, cuando el matrimonio De León-Hemández fue a recoger a sus hijas, la madre se percató de que éstas lucían distintas a pesar de que se le había informado que eran gemelas idénticas y que ella así las recordaba. Así se lo indicó a la enfermera, quien le aseguró que “los niños cambian de un día para otro; esas son tus nenas. Se ve que eres primeriza”. Moción en cumplimiento de orden de mostrar causa por la cual no debe expedirse auto de certiorari, pág. 2. Así pues, inexplicablemente confiando en la alegada experiencia del personal del Hospital y haciendo caso omiso de su personal observación y conclusión, el mencionado matrimonio se llevó a las niñas a su hogar sin realizar gestión o investigación posterior alguna sobre la referida observación.
Paralelamente, el 4 de septiembre de 1985 la Sra. Rosaura Hernández Morales había dado a luz a un par de hermanas gemelas producto de su relación consensual con el Sr. Edward Rosa Santos. Las niñas, Samantha y Jennifer, igualmente fueron trasladadas a la guardería del hospital hasta que, cinco días más tarde, fueron dadas de alta. Samantha y Jennifer lucían características distintas. Una de ellas era rubia y robusta, mientras la otra era más pequeña y de pelo oscuro.
Un año y siete meses después, mientras la tía del primer par de gemelas, la Sra. Gloria Hernández Ramos (Gloria), se encontraba en un dispensario médico se percató de que allí estaba una niña con un sorprendente parecido a su sobrina, Mari Tairí. La niña iba acompañada de su madre, Rosaura, a la que interrogó y luego acompañó a su hogar. Gloria le comunicó lo sucedido a su hermana Dulce, quien, horas más tarde, llevó a las niñas a la casa de Rosaura.
*405 Allí, cada niña comenzó a tocar a la otra y empezaron a gritar. Igualmente, tanto los adultos como las niñas empezaron a llorar. Dulce casi se desmaya y Rosaura enmudeció ante la escena. En la noche, Juan Ramón (padre de Mari Tairí y Tairí Mari) fue a la casa de Rosaura a ver las niñas e, igualmente, quedó “afectado” por el suceso.
Posteriormente, las partes se sometieron a pruebas clínicas con el propósito de comprobar si las niñas habían sido intercambiadas. El estudio demostró que Samantha no podía ser hija de Rosaura y que Tairí Mari no podía ser hija de Dulce. Se procedió, entonces, al intercambio de las niñas con sus respectivos padres biológicos.
Una vez presentada la demanda y tras llevarse a cabo un proceso de descubrimiento de prueba, la Asociación de Garantía de Seguros Misceláneos, en interés de la Universidad de Puerto Rico, admitió negligencia en el caso de autos. Finalmente, luego de celebrarse el juicio en su fondo, el tribunal de instancia dictó sentencia condenando a las demandadas peticionarias a un pago total de $1,645,000; esto es:
1. A Dulce María Hernández Ramos, $400,000.
2. A Juan Ramón de León Flores, $400,000.
3. A Rosaura Hernández Morales, $400,000.
4. A Gloria Hernández Ramos, $100,000.
5. A Teófila Flores Ramos, $100,000.
6. A Edward Rosa Santos, $25,000.
7. A Carmen Gloria Ramos Salgado, $25,000.
8. A Eugenio Hernández Báez, $25,000.
9. A Tairí de León Hernández, $50,000.
10. A Samantha y a Jennifer Rosa Hernández, $50,000 a la primera y $25,000 a la segunda.
11. A Joselyn y Aida Cruz Hernández y a Deborah Huertas Hernández, $15,000 a cada una.
Inconformes, la parte demandada peticionaria acudió ante este Tribunal, alegando que el Tribunal de Apelaciones erró
... al confirmar la sentencia del [Tribunal de Primera Instancia] *406 que concedió a la parte demandante cuantías exageradamente altas no justificadas por la prueba desfilada ni por los criterios de fijación de daños establecidos por la doctrina del Tribunal Supremo de Puerto Rico y descartar el análisis comparativo para valorar los daños de los demandantes.
... al descartar la doctrina de negligencia comparada que debe reducir la compensación que deben recibir en este caso algunos de los demandantes. (Enfasis suplido.) Petición de certiorari, pág. 12.
II
El propósito de la acción de daños autorizada por el Art. 1802 del Código Civil, 31 L.P.R.A. see. 5141, es reparar los daños causados y no castigar al que los perpetró. Véase S.L.G. Rodríguez v. Nationwide, 156 D.P.R. 614 (2002). De ahí que los tribunales sentenciadores deberán asegurarse que la compensación que conceden a los reclamantes sea justa y razonable, y que no constituya un castigo indirecto a la parte demandada. Id.
La cuantificación de los daños reside, de ordinario, en el sano juicio y discreción del juzgador de hechos, quien ha estado en contacto directo con la prueba. S.L.G. Rodríguez v. Nationwide, supra. Así pues, en deferencia a los foros de instancia, los tribunales apelativos únicamente deberán modificar las cuantías concedidas en aquellos casos en que éstas “sean ridiculamente bajas o exageradamente altas”, íd., pág. 623.
La parte que solicite la modificación de la indemnización concedida por el foro de instancia deberá demostrar que en efecto existen circunstancias que así lo justifican. Albino v. Ángel Martínez, Inc., 171 D.P.R. 457 (2007). La mera alegación sobre la improcedencia de las compensaciones concedidas es insuficiente para que los foros apelativos las modifiquen. Id. La abstención judicial deberá prevalecer en ausencia de prueba que demuestre que ha mediado prejuicio, parcialidad, pasión o error manifiesto en la eva *407 luación y valoración de los daños. S.L.G. Rodríguez v. Nationwide, supra.
III
Por otro lado —y aun cuando la orden de mostrar causa emitida en el presente caso no versa sobre el segundo señalamiento de error— debe señalarse que en nuestra jurisdicción impera la doctrina de negligencia comparada. Véase Quiñones López v. Manzano Pozas, 141 D.P.R. 139 (1996). Esta fue adoptada por disposición de la Ley Núm. 28 de 9 de junio de 1956, que enmendó el Art. 1802 de nuestro Código Civil, el cual dispone:
El que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a reparar el daño causado. La imprudencia concurrente del perjudicado no exime de responsabilidad, pero conlleva la reducción de la indemnización. (Énfasis suplido.) 31 L.P.R.A. see. 5141.
En conformidad con esta doctrina, la negligencia concurrente del perjudicado y demandante reduce la compensación a la que tiene derecho. Véase Quiñones López v. Manzano Pozas, supra, pág. 176. De esta forma, la responsabilidad de cada parte por los daños causados, o sufridos, se distribuirá en proporción a su negligencia.
IV
Como este Tribunal expresara ya hace algunos años, “no existe una tabla o computadora electrónica que recoja todos los elementos y premisas inarticuladas que nutren la valoración del dolor físico y mental humano y permita, mediante la aplicación de unas teclas o el oprimir unos botones, obtener el resultado final apropiado. Esta función descansa sobre el ejercicio discrecional prudente, juicioso y razonable del juzgador de hechos animado por un sentido *408 de justicia y de consciencia humana”. (Énfasis suplido.) Urrutia v. A.A.A., 103 D.P.R. 643, 647 (1975).
Ahí, precisamente, radica nuestra enorme preocupación con la valoración y adjudicación de los daños concedidos por el tribunal de instancia en el presente caso. Un examen de las cuantías concedidas demuestra, claramente, que en el caso de autos no hubo una prudente y juiciosa individualización de las cuantías concedidas por daños, a los distintos demandantes, causando que éstas sean “exageradamente altas”. Meramente, a manera de ejemplo, señalamos que el tribunal de instancia le concedió a las dos madres demandantes exactamente la misma cantidad de dinero por daños, esto es, la suma de $400,000. Cabe preguntarse: ¿ambas madres sufrieron y experimentaron los mismos sufrimientos? La misma situación se da con los demás codemandantes. Esto es, el tribunal de instancia parece ser que los “agrupó” conforme su relación de parentesco con las gemelas demandantes.
Esa, ciertamente, no es una actuación prudente y juiciosa de estimación de daños-, sobre todo, cuando consideramos que puede argumentarse, con alguna justificación, que se puede imputar algún porciento de negligencia comparada a los codemandantes Dulce María Hernández Ra-mos y su esposo Juan Ramón de León Flores, ya que desde el primer día se percataron de que, a pesar de haber sido informados de que se trataba de gemelas idénticas, las criaturas que le fueron entregadas no lo eran y no hicieron nada al respecto. ¿Deben ser éstos compensados con la misma cantidad de dinero que los otros padres?
En fin, entendemos que deberían reducirse las cuantías concedidas a los demandantes en el presente caso debido a que éstas son “exageradamente altas”. S.L.G. Rodríguez v. Nationwide, supra. A esos efectos, consideramos que los codemandantes deberían ser compensados de la manera siguiente:
1. A Dulce María Hernández Ramos, $225,000.
*409 2. A Juan Ramón de León Flores, $225,000.
3. A Rosaura Hernández Morales, $300,000.
4. A Gloria Hernández Ramos, $100,000.
5. A Teófila Flores Ramos, $75,000.
6. A Edward Rosa Santos, $25,000.
7. A Carmen Gloria Ramos Salgado, $25,000.
8. A Eugenio Hernández Báez, $25,000.
9. A Tairí De León Hernández, $50,000.
10. A Samantha y a Jennifer Rosa Hernández, $50,000 a la primera y $25,000 a la segunda.
11. A Joselyn y Aida Cruz Hernández, y a Deborah Huertas Hernández, $15,000 a cada una.

(1) Compuesta por el Juez Asociado Señor Rebollo López, como su presidente, y las Juezas Asociadas Señora Fiol Matta y Señora Rodríguez Rodríguez; ello debido a la inhibición del Juez Presidente Señor Hernández Denton y a la no intervención del Juez Asociado Señor Rivera Pérez. La Juez Asociada Señora Rodríguez Rodríguez hizo constar, en dicha resolución, que denegaría el recurso.