El Juez Asociado Señor Rivera García
emitió la opinión del Tribunal.
Este recurso nos brinda la oportunidad de exponer si, conforme al tratamiento que ha tenido la doctrina de culpa in contrahendo en nuestro ordenamiento jurídico, procede compensar a una parte por las ganancias que dejó de per-cibir al no haberse perfeccionado el contrato proyectado.
En este caso, Puerto Rico Freight Systems (PRFS o la recurrida) presentó contra la Compañía de Comercio y Ex-portación (la peticionaria(1) una demanda sobre daños y perjuicios en la que le reclamó unas indemnizaciones al amparo de dicha doctrina. El Tribunal de Primera Instan-cia (TPI) la declaró “ha lugar” y concedió a favor de la re-currida, entre otras, una compensación en concepto de lu-cro cesante. El Tribunal de Apelaciones confirmó esa determinación e, inconforme con ello, la peticionaria com-pareció ante nosotros mediante el recurso de certiorari de epígrafe.
Atendido el recurso, ordenamos a la recurrida que mos-trara causa por la cual no debíamos expedir el auto solici-tado y modificar esa sentencia, específicamente, la parte *47 que avaló la compensación por las ganancias dejadas de percibir. Estudiado el asunto, determinamos expedir para revisar si procede o no esa partida.
I — I
PRFS es una corporación que realiza exportaciones ma-rítimas desde Puerto Rico hacia el Caribe. Su relación con la peticionaria se remonta a un contrato de arrendamiento que suscribieron en 1993. Mediante este contrato, PRFS arrendó un edificio —identificado como el número 11— perteneciente a la Compañía de Comercio y Exportación. Más adelante, para 1997, PRFS le comunicó al administra-dor de las instalaciones comerciales de su arrendadora que vislumbraba expandir su negocio, razón por la que intere-saba arrendar otro edificio. Así, entonces, la peticionaria le comunicó a PRFS que próximamente estaría construyendo el “edificio 15” dentro de una zona identificada como la “zona libre”.(2) Esto llamó la atención del presidente de PRFS, el Sr. Miguel Padilla, ya que interesaba convertirse en operador de esa zona.
Ahora bien, debido a ciertas desavenencias que surgie-ron durante la vigencia de ese contrato de arrendamiento, PRFS instó una acción judicial sobre injuction preliminar, cumplimiento específico de contrato y daños en contra de la peticionaria. A raíz de ese pleito, las partes suscribieron en diciembre de 1999 una moción de desistimiento por estipu-lación mediante la cual PRFS desistiría del caso sin perjuicio. El objeto principal de tal transacción fue el fu-turo arrendamiento del “edificio 15”. En su parte perti-nente, la estipulación dispuso:
B) Las partes acuerdan que la parte co-demandada, ahora Corporación para el Desarrollo de las Exportaciones le arren- *48 dará al demandante el edificio número 15 del Centro Mercan-til Internacional, el cual al presente se encuentra en construc-ción, siempre y cuando las partes lleguen a un acuerdo en los asuntos que están negociando actualmente.
C) Con relación al Contrato del Edificio 15 el señor Padilla solicita que:
1. Que el contrato sea de 10 años renovable a 10 años más.
2. El canon de arrendamiento no será mayor de cinco dóla-res con cincuenta centavos ($5.50) anual el pie cuadrado, por el término del contrato.
3. La Corporación será responsable de todas las mejoras, diseños y construcciones estructurales y el señor Padilla será responsable de todas las mejoras interiores y de oficina.
4. Las mejoras que realice el señor Padilla en el Edificio 15 serán aprobadas previamente por la Corporación. Dicha apro-bación no puede ser irrazonablemente denegada. Al concluir el contrato, la Corporación, a su costo, podrá eliminar estas mejoras.
5. En la eventualidad de que la Corporación resuelva el contrato por falta de pago de canon de arrendamiento, el señor Padilla será responsable por los cánones de arrendamiento mientras las facilidades del Edificio 15 estén deshabitadas. La Corporación será responsable de hacer gestiones de buena fe para conseguir un nuevo arrendatario.
D) El señor Padilla será responsable de convertirse en ope-rador independiente de la Zona Libre. De convertirse en ope-rador independiente de la Zona Libre se revisará el contrato de arrendamiento del Edificio 11 a los efectos de incluir al arrendador dentro de los incentivos y/o ayudas que estuviesen vigentes para los operarios de la Zona Libre.
E) La Corporación para el Desarrollo de las Exportaciones se compromete a presentar ante su Junta de Directores las peticiones del señor Padilla para su estudio y consideración, sin que por ello se entienda que su gestión constituye una aceptación o compromiso de que las peticiones serán aprobadas. Se aclara que específicamente las peticiones nú-mero 1 y 2 del apartado c) constituyen peticiones fuera del ámbito de poderes de otros funcionarios que no sea la Junta de Directores de la Corporación y sólo pueden ser aprobad [a] s expresamente por [e]stos últimos.
F) Una vez las partes hayan llegado a un acuerdo, la Cor-poración se compromete a tramitar prontamente la redacción y aprobación del contrato de arrendamiento del Edificio 15. Apéndice de la Petición de certiorari, págs. 2151-2153.
*49 Como vemos, la peticionaria se comprometió a llevar ante su Junta de Directores los requerimientos de PRFS en cuanto a las cláusulas del contrato de arrendamiento que se proyectaba. Los orígenes del caso de epígrafe se re-montan a esa estipulación. Conforme a lo convenido, PRFS invirtió dinero para adecuar el “edificio 15” a sus necesida-des operacionales y para adiestrar parte de su personal en cuanto a los trabajos que allí se realizarían. Además, hizo presentaciones publicitarias a varias compañías, en y fuera de Puerto Rico, para ofrecerles los servicios de exportación. Sin embargo, transcurrieron dos años sin que se llegara a un acuerdo formal con respecto al “edificio 15”. Trascendió que la Junta de Directores de la peticionaria aprobó un término y un canon de arrendamiento mayor al que PRFS había solicitado mediante la estipulación. PRFS no aceptó tales condiciones y, consecuentemente, el con-trato de arrendamiento no llegó a perfeccionarse.
Así las cosas, la recurrida presentó una demanda de in-terdicto en contra de la peticionaria para solicitar el cum-plimiento específico de la estipulación. Empero, el foro pri-mario la desestimó, ya que entre las partes no llegó a existir un contrato. No obstante, resolvió lo anterior sin peijuicio de las causas que PRFS pudiera presentar por posibles daños y perjuicios.
Ante ese cuadro, PRFS incoó una demanda sobre daños y perjuicios en contra de la peticionaria. En lo que es per-tinente al recurso que atendemos, la recurrida apuntó que tuvo una expectativa razonable de que el contrato de arrendamiento del “edificio 15” se perfeccionaría conforme a las especificaciones consignadas en la estipulación. Esto, debido a las representaciones y actuaciones de los agentes y representantes de la peticionaria. Agregó que, acorde con esas expectativas, invirtió sobre doscientos mil dólares para acondicionar la estructura del edificio a sus necesida-des, así como para poder convertirse en operador de la *50 zona libre.(3) También solicitó, entre otras indemnizacio-nes, una compensación a scendente a $7,872,084 porlos in-gresos que dejó de percibir, dada la pérdida de clientes prospectivos al no arrendar el edificio 15. (4)
Celebrado el juicio, el TPI declaró “ha lugar” las recla-maciones antes mencionadas. Determinó, como cuestión de hecho, que durante el periodo de construcción del “edificio 15” no se le notificó al señor Padilla que se perfilaba un cambio radical en cuanto a los términos del contrato de arrendamiento de ese inmueble. Por el contrario, sostuvo que el Director Ejecutivo de la peticionaria le creó la expec-tativa al señor Padilla de que endosaría las propuestas que se consignaron en la estipulación. De esta forma, el foro primario encontró a la peticionaria responsable conforme a la doctrina de culpa in contrahendo y le impuso el pago de $2,879,256.80. Esta cantidad incluye los ingresos que hu-biese generado PRFS durante el término contractual dis-puesto en la estipulación y los gastos invertidos en las al-teraciones estructurales del “edificio 15”, así como en el desarrollo y la promoción de la “zona libre”.(5) Además, le impuso el pago de cuatro mil dólares en honorarios de abo-gado por temeridad.
Insatisfecha con el dictamen, la peticionaria acudió al *51 Tribunal de Apelaciones y argüyó que no actuó de mala fe durante las negociaciones e imputó error al TPI al conce-der dichas partidas indemnizatorias, en especial, la refe-rente al lucro cesante.(6) El foro intermedio confirmó la de-terminación del TPI en todos sus aspectos, sosteniendo así la compensación adjudicada por lucro cesante. Funda-mentó su dictamen en que esa partida estaba sostenida por la prueba y en que el propósito de la doctrina de culpa in contrahendo es regresar a las partes a la situación en que se encontraban antes de comenzar los tratos fallidos.
No conteste con tal proceder, comparece ante esta Curia la peticionaria y nos señala que:
1. Erró el Honorable Tribunal de Apelaciones al confirmar la sentencia del Tribunal de Primera Instancia y conceder a la corporación demandante $218,481.00 por concepto de gastos incurridos en la consecución de un contrato de arrendamiento, cuando medió buena fe por parte de la CCE y esta no se retiró de las negociaciones.
2. Erró el Honorable Tribunal de Apelaciones al confirmar la sentencia del Tribunal de Primera Instancia y conceder una suma millonaria para compensar los gastos positivos bajo la doctrina de culpa in contrahendo, suma totalmente improce-dente en derecho.
3. Erró el Honorable Tribunal de Apelaciones al confirmar la sentencia del Tribunal de Primera Instancia y conceder inte-reses pre-sentencia y honorarios de abogado por temeridad.
*52 Por su parte, la recurrida puntualiza que este caso no se puede disponer únicamente de acuerdo con la doctrina de culpa in contrahendo. Nos sugiere, entonces, que lo analicemos de acuerdo con los Arts. 1802, 1803 y 1059 del Código Civil de Puerto Rico, disposiciones que, a su juicio, justifican la indemnización concedida.(7)
Ante el marco fáctico que precede, pasamos a exponer las normas jurídicas que se relacionan con la controversia.
1 — 1 l — l
A. Sabemos que mediante un contrato, una persona se obliga a dar una prestación a otra. Una vez constituido, ese convenio se convierte en la ley entre las partes, cosa que se traduce en el principio de pacta sunt servanda, o, en otras palabras, en que las partes están comprometidas a cumplir lo pactado. Véase BPPR v. Sucn. Talavera, 174 D.P.R. 686 (2008). Por ello, contravenir una obligación contractual acarrea el pago de alguna indemnización o quedar sujeto al cumplimiento específico de las cláusulas pactadas. Véanse: Arts. 1230 y 1054 del Código Civil de Puerto Rico, 31 L.P.R.A. sees. 3451 y 3018.
Ahora bien, la doctrina reconoce que existen varias etapas que preceden la perfección de un contrato. Así, pues, se ha dicho que tiene lugar una etapa preliminar preparatoria, una de perfección y, por último, una ejecutoria. La primera de estas comprende los tratos o las negociaciones preliminares, es decir, el proceso interno de *53 la formación del contrato; la segunda se da cuando concu-rren todos los elementos esenciales para la existencia de este, y la tercera se refiere a cuando se realiza el cumpli-miento de la prestación acordada.(8) J.M. Lete Del Río y otros, Derecho de obligaciones, Navarra, Ed. Thomson Aranzadi, 2010, Vol. 1, pág. 467. En este caso, nos corresponde estudiar lo pertinente a la etapa preliminar, y es preciso señalar que no han sido pocas las opiniones que esta ha suscitado, siendo así objeto de interesantes debates doctrinarios. Examinemos, pues, dicha normativa.
Hablando sobre los tratos preliminares, Antonio Román García nos instruye en cuanto a que en el transcurso de estos,
... las partes pueden haber coincidido sobre una serie de as-pectos y concretar estos acuerdos parciales dándoles incluso forma escrita; son apuntes, minutas, borradores o proyectos que, o bien pueden recoger puntos esenciales del futuro con-trato, o derivaciones puramente accidentales, representando, en todo caso, por sí mismos la continuación de la etapa prepa-ratoria del contrato iniciada con los tratos preliminares que, por otro lado, no provocan generalmente ningún género de na-turaleza contractual. (Citas omitidas). A. Román García, El precontrato: estudio dogmático y jurisprudencial, Madrid, Ed. Montecorvo, 1982, págs. 373-374.
Se deduce que durante estas negociaciones que prece-den al contrato, no existen los elementos necesarios para que pueda nacer la obligación contractual; es decir, el con-trato no está supeditado a la aceptación de una oferta, puesto que esta aún se encuentra en la etapa de *54 gestación.(9) Lo que ocurre en esta fase son conversaciones en las que se discute, se proyecta, se observa y se sugiere, a la par que se perfilan los términos que más adelante servirán para establecer la base del contrato. B. Moreno Quesada, La oferta de contrato: génesis del contrato y res-ponsabilidad antecontractual, Barcelona, Ed. Nereo, 1963, pág. 16. Otros autores han señalado que este período com-prende simplemente un intercambio de ideas destinado a llegar, con el tiempo, a la formulación de la oferta de con-trato, pero que no es obligatorio, ni la parte que formule las ideas está forzada a permanecer en ellas. E.A. Sánchez Urite, La oferta de contrato: fuerza vinculante, Argentina, Ed. Abeledo-Perrot S.A., 1975, pág. 108. Como bien nos resume Luis Diez-Picazo,
[e]stas conversaciones, proyectos o minutas no constituyen per se ningún acto jurídico en sentido estricto, pues de ellos no se derivan efectos jurídicos de manera inmediata. No puede de-cirse que entre las partes se cree una relación jurídica origi-nada por la voluntad de iniciar los tratos o las conversaciones. Sin embargo, tampoco puede decirse que los tratos o conver-saciones sean en sí mismos irrelevantes. L. Diez-Picazo y otros, Fundamentos del derecho civil patrimonial, 6ta ed., Pamplona, Ed. Thomson Civitas, 2007, Vol. I, pág. 333.
Ciertamente, las partes realizan tratos preliminares *55 para perfeccionar un contrato, y es necesario destacar que en los de gran importancia económica o de cierta compleji-dad, es frecuente que antes del concurso contractual, ten-gan lugar tales intercambios de ideas. Véase L. Diez-Picazo, Sistema de derecho civil, 6ta ed. rev., Madrid, Ed. Tecnos, 1989, págs. 68-69.
No obstante, es un principio cardinal en el ordenamiento jurídico puertorriqueño que nadie está obligado a contratar. Colón v. Glamourous Nails, 167 D.P.R. 33, 44 (2006).(10) Véase, también, Prods. Tommy Muñiz v. CO-PAN, 113 D.P.R. 517, 526 (1982). Es decir, las partes no están obligadas a proseguir con las negociaiones hasta perfeccionar el contrato, sino que se pueden retirar de estas acorde a sus mejores intereses. Id. Esa conclusión es ineludible, ya que el hecho de que no se concrete el convenio es, por la misma naturaleza de los tratos preliminares, uno de sus posibles desenlaces. Dicho de otra manera, se intenta un resultado que, en ocasiones, puede que no llegue a ocurrir. Moreno Quesada, op. cit., pág. 54. Véase, también, Román García, op. cit., pág. 365. Así, pues, entrar en una relación contractual se entiende como un ejercicio de la voluntad propia. Véanse: Arts. 1206 y 1213 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 3371 y 3391.
B. Conforme hemos discutido, es prerrogativa de las partes desistir de los tratos precontractuales. No obstante, se ha reiterado que el ejercicio de un derecho no está exento de responsabilidad si se ejercita abusivamente. Prods. Tommy Muñiz v. COPAN, supra, pág. 528. Esto significa que existen límites en cuanto a la manera de retraerse de las negociaciones durante los tratos preliminares.(11) Véase Lete Del Río, op. cit, pág. 468.
*56 Esta Curia se enfrentó a esa situación por primera vez en Prods. Tommy Muñiz v. COPAN, supra. Allí, luego de que las partes estuvieran negociando por un lapso de tiempo sin que se hubiese otorgado un contrato, el Sr. Tommy Muñiz demandó a COPAN para que cumpliera con la adjudicación de una subasta. Ante ello, el foro de instan-cia resolvió que la parte demandada estaba obligada a re-sarcir únicamente los perjuicios causados y los gastos en que el demandante hubiese incurrido durante las negociaciones. Al revisar el dictamen, por no existir en nuestro derecho positivo una figura jurídica que atendiera directamente esa controversia, examinamos entonces la doctrina de la culpa in contrahendo, expuesta en sus orí-genes por el autor alemán Rudolf Von Ihering.(12)
Luego de estudiar el asunto, expusimos que las partes tienen pleno derecho a decidir si se obligarán contractualmente. Sin pasar por alto lo antes mencionado, dictaminamos que durante la fase precontractual es imperativo que estas actúen conforme a la buena fe.(13) Prods. Tommy Muñiz v. COPAN, supra, págs. 526-527. Señalamos, en palabras del tratadista español Diez-Picazo, que dicho deber “ ‘no impera solamente en las relaciones jurídicas ya establecidas o constituidas, sino también en las relaciones derivadas de un simple contacto social’ ”. Id., pág. 527.(14)
*57 Si bien en el caso precitado aplicamos la doctrina de la culpa in contrahendo cuando una parte obra contrario a la buena fe y, negligentemente, causa un daño a otro, no pasó desapercibida la dificultad de definir la categoría jurídica de esta doctrina. En ese sentido, dijimos que
... la amplia gama de supuestos sobre los cuales puede asen-tarse la responsabilidad precontractual hace necesario que en el análisis del problema se considere qué figura jurídica —culpa, dolo, fraude, buena fe, abuso del derecho u otros prin-cipios generales del derecho— responde más adecuadamente como fundamento jurídico para la solución del caso. [Esto ya que l]as negociaciones que anteceden al contrato pueden ser de variada índole y, por tanto, la responsabilidad precontrac-tual puede surgir en diferentes supuestos. Prods. Tommy Muniz v. COPAN, supra, págs. 529-530.
Como vemos, a partir de Prods. Tommy Muñiz v. COPAN, supra, no existe duda de que la referida doctrina tiene cabida en el ordenamiento jurídico puertorriqueño; no actuar en concordancia con lo que exige la buena fe requerida en el periodo precontractual apareja incurrir en la responsabilidad que se deriva de la llamada culpa in contrahendo. Empero, en aquella ocasión no abordamos la normativa que concierne a la compensación que debe otor-garse en una causa de esa naturaleza. En cuanto a esa materia, gran parte del debate doctrinario se relaciona a la catalogación que se le confiere a la culpa in contrahendo, es decir, el carácter contractual, extracontractual o sui ge-neris de la doctrina. Mientras, otros autores restan impor-tancia a tal clasificación. Entienden que la médula del asunto está en la indemnización que se otorgue.(15)
*58 Por nuestra parte, en Torres v. Gracia, 119 D.P.R. 698, 703 (1987), resolvimos una controversia al amparo de la doctrina de culpa in contrahendo, y acogiendo la tesis de Bernardo Moreno Quesada,(16) mencionamos que esa responsabilidad se encontraba inmersa en el Art. 1802 del Código Civil de Puerto Rico, supra, dado a que en ese artículo se recogen, entre otros, los casos de perjuicios causados por el ejercicio abusivo de los derechos. Años después, en Colón v. Glamourous Nails, supra, enunciamos que el deber de actuar conforme a la buena fe durante los tratos preliminares no se refiere a la obligación de diligencia genérica y erga omnes impuesta por el Art. 1802, supra. Más bien, proferimos que la culpa in contrahendo
[e]s una obligación hacia una persona determinada, que surge en aquel momento en el curso de las negociaciones en el cual el ejercicio del derecho de una parte a retirarse, corolario del principio de la autonomía de la voluntad, activa la protección de la confianza depositada por la otra y resulta contrario al principio inmanente de la buena fe.
La realidad es que, al igual que otros supuestos de respon-sabilidad que nacen por aplicación de los principios derivados de la buena fe, la culpa in contrahendo carece de regulación propia. Por eso, aunque la hemos ubicado, por analogía, bajo la égida del Art. 1802 del Código Civil, supra, estamos obliga-dos a continuar colmando, caso a caso, los vacíos normativos subsistentes, en aquellos aspectos que no son del todo compatibles con los elementos típicos de la responsabilidad extracontractual. Colón v. Glamourous Nails, supra, pág. 55.
Parte del asunto referente a la indemnización que se debe conceder lo intimamos en ese mismo caso, al dilucidar si procedía conceder a la demandante una compensación por los daños emocionales, según esa causa. Esgrimimos, citando a Asúa González y a Ghersi, que
[l]a indemnización por culpa in contrahendo es, pues, repara- *59 tiva, basada en el principio de que quien vulnera la confianza depositada por otro, debe devolver a esa persona al estado en que estaría si no se hubiesen dado las circunstancias que dan lugar a la reparación. Se cuida mucho la doctrina de permitir que a través de la indemnización la parte agraviada obtenga las ventajas económicas que hubiera representado llevar a fe-liz término el proceso de negociación (interés positivo). En vez, el objetivo es “colocar al perjudicado como si no hubiese em-prendido los contactos negociales”. (Cita omitida.) Colón v. Glamourous Nails, supra, pág. 57.
De esta manera, dictaminamos que el deber de indem-nizar por el rompimiento culposo de los tratos preliminares alcanza, de ordinario, tan solo el llamado “interés negati-vo”, es decir, la reparación de los gastos sufridos y las pér-didas patrimoniales(17) derivadas del proceder arbitrario de la parte culpable.(18) Colón v. Glamourous Nails, supra, pág. 58. Conforme a ese análisis, rechazamos el argumento de que procedían compensaciones morales en tales casos.
Los fundamentos que delimitan la indemnización que se debe conceder en casos de culpa in contrahendo son: (1) que la responsabilidad de actuar conforme a la buena fe surge como “hija de la equidad”, para sancionar el que- *60 brantamiento de la confianza, y (2) la fuerte política pú-blica que existe a favor del tráfico jurídico y la libertad de contratación. En cuanto a esto último, fuimos enfáticos en establecer la necesidad de sujetar el alcance de esa respon-sabilidad a consideraciones de política pública que usual-mente no están presentes en la determinación de respon-sabilidad extracontractual. Es por eso que reiteramos que la doctrina de la culpa in contrahendo se debe aplicar solo restrictivamente. Colón v. Glamourous Nails, supra, pág. 47. Torres v. Gracia, supra, pág. 710. Nos señala Luis Diez-Picazo, anotando a De Lupis, que “si se estableciera un régimen general de responsabilidad, se impondría a las partes tal cautela y circunspección que se obstaculizaría energéticamente la vida del tráfico”. Diez-Picazo, Sistema de derecho civil, op. cit., pág. 68.
Si bien expusimos las instancias en que hemos aplicado la doctrina de culpa in contrahendo, la anterior reseña no dispone de la controversia que nos ocupa. Como ya adelan-tamos, debemos justipreciar si en el ordenamiento jurídico puertorriqueño procede compensar el lucro cesante de acuerdo con los fundamentos de la doctrina en discusión. La peticionaria arguye en la negativa, por cuanto en Colón v. Glamourous Nails, supra, resolvimos que la compensa-ción incluiría únicamente el llamado “interés negativo”. Nos corresponde, pues, delimitar el alcance de dicho interés. De entrada, destacamos que la doctrina se encuen-tra dividida respecto a ese particular. Por un lado, algunos juristas opinan que las ganancias dejadas de percibir de-ben incluirse dentro del llamado “interés negativo”, mien-tras otros opinan lo contrario. Procedamos a escrutar este asunto y definiendo primeramente, el concepto lucro ce-sante y, luego, dilucidando si ese tipo de compensación es cónsona con la doctrina en discusión.
C. El Art. 1059 del Código Civil de Puerto Rico, supra, que trata sobre la naturaleza y el contenido de las obligaciones, regula el deber de resarcir a una persona por *61 las ganancias que dejó de percibir. Esta disposición precep-túa que “[l]a indemnización de daños y perjuicios com-prende no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor ...”. 31 L.P.R.A. sec. 3023. Por su ubicación en el Código, este tipo de reparación es exigible en caso de in-cumplimientos contractuales o extracontractuales. Véase A. Borrell Maciá, Responsabilidades derivadas de culpa extracontractual civil: estudio del artículo 1902 del Código Civil y breves comentarios sobre los artículos 1903 a 1910 del propio cuerpo legal, Barcelona, Ed. Bosch, 1958, Sec. 38, págs. 81-83.
En nuestra jurisprudencia hemos descrito a la compensación por lucro cesante como aquella partida de daño que debe resarcirse por la pérdida de ingresos infligida al perjudicado y la corréspondiente disminución de su capacidad productiva. S.L.G. Rodríguez v. Nationwide, 156 D.P.R. 614, 623-624 (2002). Más específicamente, es una ganancia futura frustrada que con cierta probabilidad se esperaba, según el curso natural de los acontecimientos. Id.(19) Y en relación con el presente caso, conviene anotar los apuntes del tratadista Manuel Albaladejo en cuanto a que también constituyen lucro cesante los contratos frustrados que se hayan hecho con terceros o que se pudieran haber realizado de no haber mediado el incumplimiento del deudor. M. Albaladejo, Comentarios al Código Civil y compilaciones forales, Madrid, Ed. Rev. Der. Privado, 1989, T. XV, Vol. 1, pág. 687.
Ahora bien, existen ocasiones en las cuales será improcedente esta partida. Una de estas es cuando resulta especulativa o no se puede demostrar su correlación con el acto dañoso. S.L.G. Rodríguez v. Nationwide, supra. Por *62 otro lado, cuando se refiere a las situaciones en que ha mediado un incumplimiento contractual, Albaladejo nos in-dica que
[t]ambién está justificado el rechazo cuando el acreedor ha solicitado por vía resolutoria la indemnización de los gastos de confianza contractual (interés negativo) y, cumulativamente, la ganancia frustrada por incumplimiento. Albaladejo, op. cit., pág. 686.
Relacionado con lo anterior, y discutiendo el Art. 1.124 del Código Civil de España —análogo al Art. 1077 de nues-tra legislación civil,(20) que regula el derecho a resolver las obligaciones recíprocas— Diez-Picazo nos ilustra que el lu-cro cesante no debe proceder cuando una parte solicita que se resuelva un contrato. Razona que la propia definición de “lucro cesante” implica que el acreedor se quiere colocar en la misma situación patrimonial en la que estaría si el con-trato hubiese llegado a buen término, cosa que no guarda armonía con la resolución. Diez-Picazo, Sistema de derecho civil, op. cit., pág. 271. Una vez definido el lucro cesante y algunas de las instancias en que este no procede, pasemos a determinar si el “interés negativo” engloba su recobro. Para ello, debemos repasar los orígenes de ese interés, co-metido en el que nos ayudan los apuntes de la profesora María García Rubio. Veamos.
Nos recuerda esta autora que Rudolf Von Ihering, al exponer su tesis en cuanto a la culpa in contrahendo, se enfocó en el hecho de que si una parte ocasionaba la nuli-dad de un contrato, por haber incurrido en esa culpa, res-pondía frente a la otra por el daño causado debido a la anulación. García Rubio, op. cit., pág. 27. Nos continúa re- *63 ¡atando que el “culpable” no habría de responder con el equivalente de la prestación prometida, ya que de un con-trato nulo no podría surgir la obligación de cumplir. Anota que, según los postulados del tratadista alemán, el “culpable”
... estar[ía] obligado a poner a la otra parte en la misma situa-ción patrimonial en que se encontraría si no hubiese estipu-lado el negocio; esto último sería el interés negativo, o interés en la no conclusión del contrato, por oposición a aquello, que sería el interés positivo o interés en el mantenimiento o ejecu-ción de la obligación, existiendo correspondencia entre lo pri-mero y la invalidez del negocio, y lo segundo y su validez. El interés negativo, que en determinadas ocasiones podría alcan-zar el montante del interés positivo, vendría conformado tanto por pérdidas efectivas, como por falta de ganancias; entre las primeras estarían los gastos realizados en preparación y eje-cución del contrato nulo (v. gr., gastos de embalaje, expedición, etc.); entre las segundas habría de computarse, sobre todo, la pérdida de otras ocasiones favorables de contratar. (Escolio omitido). García Rubio, op. cit., pág. 28.
Para el tratadista alemán Von Ihering, dentro de la falta de ganancias debían computarse los daños derivados por el rechazo de otras ocasiones en que se hubiese podido concluir el contrato, así como el hecho de haber dejado de buscar en tiempo útil esas posibles oportunidades. García Rubio, op. cit., pág. 231. Es de notar que el precursor de la doctrina de la culpa in contrahendo estimó que la pérdida de ganancias figuraba como parte del interés negativo. En nuestro tiempo, hay también quienes piensan de manera similar. Algunos autores opinan que se debe calcular como parte integral de dicho interés tanto los gastos inútilmente realizados o, más propiamente, el daño emergente(21) así como la frustración de ganancias. García Rubio, op. cit., pág. 232. Véase, también, Lete del Río, op. cit, pág. 491. *64 Para otros, el daño resarcible es todo aquel que se derive de la relación de causalidad. García Rubio, op. cit., págs. 235-236.
Por su parte, Bernardo Moreno Quesada rechaza la idea de resarcir todos los daños derivados de la falta de ejecu-ción del contrato que se esperaba formar. Concibe que de ningún modo se puede llevar a ese extremo la cuantía de la indemnización. Moreno Quesada, op. cit., pág. 56. Conti-núa exponiendo este autor, que esto será exigible solo cuando se trate de un supuesto de responsabilidad contractual, caso distinto al que tiene lugar durante los tratos preliminares.
Así también, y contrario a lo que opinaba Von Inhering, el jurista italiano Gabrielle Faggella rechazó el concepto de interés negativo, según definido por el primero, aún en ca-sos en que existiera una oferta. García Rubio, op. cit. pág. 32. Faggella razonó que el montante resarcible es el valor de la oferta con relación a la formación del contrato y los daños y gastos con los que el destinatario había contri-buido a la elaboración de los tratos y de la propia oferta, sin que en estos últimos se incluyeran los gastos derivados de la reparación de las ocasiones contractuales perdidas.
Por otra parte, Luis Diez-Picazo interpreta que, aunque la ruptura de las negociaciones no presente una causa jus-tificada, no son resarcibles los gastos que se han llamado “especulativos” o que constituyen un riesgo implícito de todo negocio. Por el contrario, serían resarcibles los gastos que de todas formas habría que realizar para iniciar las negociaciones. Diez-Picazo, Fundamentos del derecho civil patrimonial, op. cit., pág. 346. En cuanto a la inclusión del lucro cesante en el interés negativo, nos dice que
[l]a doctrina es por lo general pacífica en el sentido de que el daño resarcible en los supuestos de responsabilidad precon-tractual se limita al interés negativo, que comprende, cuando se dan los supuestos más arriba señalados, el reembolso de los gastos realizados en contemplación del contrato proyectado. Se ha discutido si el interés negativo comprende también el *65 lucro cesante o las ventajas que la parte perjudicada hubiera podido obtener por haber perdido otro negocio. En la jurispru-dencia italiana parece existir alguna línea favorable a la in-clusión de este lucro cesante, pero, con mejores argumentos, se ha sostenido a nuestro juicio la solución contraria. En los ca-sos de ruptura de negociaciones, la existencia de una ocasión más provechosa o ventajosa es un motivo justo de retirada, y si la parte no lo aprovechó, sólo a ella le es imputable. La situación parece distinta en los casos de responsabilidad pre-contractual por nulidad del contrato, donde la parte que ha violado los deberes de buena fe, se encuentra obligada al re-sarcimiento de la pérdida de la ocasión más ventajosa para quien concluyó el contrato fundado en la confianza de la vali-dez del mismo. Diez-Picazo, op. cit., pág. 347.
Si bien vimos que el profesor Diez-Picazo se ha incli-nado a no incluir las pérdidas de otras oportunidades de contratar, según nos explica María Paz García Rubio, “re-cientemente ha matizado su postura”. Estudio doctrinal: la responsabilidad precontractual en la propuesta de moder-nización del derecho de obligaciones y contratos, LXV Bo-letín del Ministerio de Justicia Núm. 2130 n. 21 (2011). Disponible en www.mjusticia.es/bmj.(22)
f — I H — I 1 — 1
Luego de exponer el tratamiento jurisprudencial y doctrinal que ha tenido la doctrina de culpa in contrahendo, así como la compensación que de ella se deriva, proceda-mos a resolver la médula del asunto ante nuestra conside-ración, esto es, si dentro de la indemnización que se ha denominado como “interés negativo” procede incluir una partida correspondiente a la pérdida de ganancias o lucro cesante. En palabras de Bernardo Moreno Quesada, nos corresponde, en nuestra función adjudicadora, “fijar la ex- *66 tensión de los daños indemnizables...”. Moreno Quesada, op. cit., pág. 58.
En el presente caso, PRFS presentó una demanda contra la peticionaria y le requirió el pago de ciertas partidas, entre las cuales incluyó una por lucro cesante. Esos daños, correctamente, fueron atendidos por los foros inferiores de acuerdo con la doctrina de culpa in contrahendo. Es claro que la estipulación que suscribieron las partes de epígrafe no se podía catalogar como un precontrato, una oferta ni un contrato de arrendamiento, puesto que aludía a que se arrendaría el “edificio número 15”, “siempre y cuando las partes lleg[aran] a un acuerdo [respecto] a los asuntos que esta [ban] negociando... ”. (23)
En este punto hacemos referencia a lo que señala una de las opiniones disidentes. Específicamente, se menciona que el contrato de arrendamiento constituía una condición suspensiva de la estipulación que suscribieron las partes para transar el pleito que tenían ante el TPI. Es claro que esa estipulación es un contrato de transacción. Sobre ello no hay duda ni controversia. En ese contrato de transac-ción, la negociación del contrato de arrendamiento del “edi-ficio 15” figuró como parte de las condiciones por las cuales los litigantes desistieron sin perjuicio del caso que se ven-tilaba ante el TPI. Una de las cláusulas de esa estipulación fue que “la parte co-demandada, ahora Corporación para el Desarrollo de las Exportaciones le arrendarla] al deman-dante el edificio número 15 del Centro Mercantil Interna-cional... siempre y cuando las partes lleg[aran] a un acuerdo en los asuntos que esta [ban] negociando...”. (En-fasis suplido). Moción de desistimiento por estipulación de las partes, Apéndice de la Petición de certiorari, pág. 2151. La mencionada cláusula contractual se ejecutó cuando las partes comenzaron las negociaciones para llegar a un acuerdo respecto al arrendamiento de ese inmueble.
*67 Luego de esto, las partes comenzaron a negociar ese contrato de arrendamiento del “edificio 15”. El punto neu-rálgico de la referida Opinión disidente es que no cataloga ese contrato de arrendamiento como un contrato indepen-diente al contrato de transacción. Si bien la negociación del contrato de arrendamiento del “edificio 15” figuró como parte de las cláusulas y condiciones del contrato de tran-sacción, lo cierto es que las partes comenzaron a negociar un contrato de arrendamiento independiente y con vida propia. Es debido a los hechos que ocurrieron durante la negociación de ese contrato de arrendamiento que PRFS acudió al TPI en busca de un remedio. Todo lo anterior denota que las partes se encontraban aún dentro de las negociaciones pertinentes para formalizar un acuerdo contractual posterior, que no existía hasta ese momento.
Tanto el foro de instancia como el apelativo entendieron que las actuaciones de la peticionaria durante esos tratos preliminares no fueron compatibles con la buena fe, ya que le creó a PRFS expectativas de que el contrato se perfec-cionaría conforme a lo que esa parte solicitó en la estipulación. Razonaron ambos tribunales que por ello la peticionaria estaba obligada a resarcir a la recurrida todos los gastos relacionados con esas negociaciones, así como las ganancias que hubiese percibido esta última de haberse perfeccionado el contrato por el tiempo dispuesto en la es-tipulación, es decir, diez años. Como mencionamos antes, le ordenamos a PRFS que mostrara causa por la cual no de-bíamos revocar parcialmente la sentencia del foro interme-dio, específicamente, en cuanto a la partida que concedió en concepto de lucro cesante. Para resolver este cuestiona-miento, debemos tener presente que en este tipo de casos, por imperativos de política pública, hay que considerar ciertas limitaciones al determinar la reparación que le co-rresponderá resarcir al “culpable”.
Ya dictaminamos en Colón v. Glamourous Nails, supra, que la responsabilidad dimanante de la culpa in contra- *68 hendo no es idéntica a la que surge del Art. 1802 del Código Civil, supra. Por eso, allí mencionamos la necesidad de lle-nar los vacíos normativos que refleje cada caso particular en aquello en que no sea compatible con los elementos tí-picos de la responsabilidad extracontractual. Una de esas incompatibilidades es que la culpa in contrahendo está su-jeta a consideraciones de política pública que, usualmente, se encuentran ausentes en casos dilucidados, según ese otro género de responsabilidad. Una de estas consideracio-nes es no coartar la libertad de contratación ni el tráfico jurídico.
Debido a lo anterior, resolvemos que el lucro cesante no es una partida que deba incluirse dentro del “interés negativo” que se compensa en Puerto Rico según la doctrina de culpa in contrahendo. La recurrida reclamó las ganancias que dejó de percibir por los contratos que hubiera podido otorgar con las compañías a las que le ofreció sus servicios de exportación. Si bien un sector de la doctrina reconoce que pueden aparecer como parte de las ganancias perdidas los futuros contratos que no pudieron efectuarse como consecuencia de un acto dañoso, es un hecho indiscutible que la peticionaria tenía la facultad de decidir no arrendarle el “edificio 15” a PRFS. En lo que la peticionaria falló fue en actuar contrario a la buena fe durante las negociaciones pero, de todas maneras, no tenía la obligación de entrar en esa relación jurídica si así no lo entendía conveniente. Creemos que resolver lo contrario iría en detrimento del tráfico jurídico que debemos proteger.
Abona a la conclusión anterior el hecho de que en controversias resueltas al amparo de la doctrina en discusión, no procedería compensar daños que, al evaluarlos más detenidamente, podrían surgir como causa del incumplimiento del contrato en sí. Tal es el caso de la partida que aquí se reclama. La medida de reparación en casos de culpa in contrahendo no puede alcanzar lo que significaría *69 el cumplimiento del contrato, ya que durante los tratos preliminares, las partes tienen la perfecta prerrogativa de no obligarse.
Conceder en estos casos una compensación de esta na-turaleza implicaría anticipar un resultado incierto, es de-cir, la perfección del contrato, revistiendo así al lucro ce-sante con un manto de especulación, cosa que limita la procedencia del lucro cesante en las acciones donde ya se estima procedente, como es el caso de las acciones incoadas al amparo del Art. 1802 del Código Civil, supra. En este caso, la dificultad probatoria no es lo que nos mueve a ne-garle a PRFS una compensación por los ingresos que hu-biese obtenido de haberse perfeccionado el contrato de arrendamiento, cosa que reclamó en su demanda. Lo que sucede es que PRFS iba a obtener esos beneficios económi-cos una vez se perfeccionara el contrato que tenía previsto con la peticionaria. Y ya hemos visto que los beneficios que se hubiesen obtenido de ese contrato no son partidas a compensar en una reclamación que se insta bajo la doc-trina de culpa in contrahendo.
Durante los tratos preliminares, el hecho de la perfección del contrato es un resultado que puede que no ocurra, independientemente de la forma en que actúen las partes. Claro está, quien se comporte de mala fe estará obligado a reparar al perjudicado por los gastos espontáneos en que incurrió durante la negociación, esto es, aquellos que nada tienen que ver con la fase ejecutoria del contrato, de manera que ubique a la parte que aspiró contratar y no pudo en la situación en que se hubiese encontrado de no haber emprendido las negociaciones. En esto, no podemos perder de perspectiva que cuando estamos frente a un caso en el cual las negociaciones no han trascendido la etapa preliminar, según la hemos descrito, esa situación es distinta a aquella en que se encuentra una persona que ya recibió xana oferta, firmó un precontrato o ya contrató. Estas últimas instancias, por su propia natu- *70 raleza, presentan escenarios completamente distintos a los que se suscitan durante los tratos preparatorios. En la etapa precontractual, en la que no existe ningún género de obligación ni se ha emitido una oferta formal, las partes poseen la expectativa de llegar a un acuerdo, no obstante, también conocen que aún poseen la facultad de retirarse.
Sin abstraemos de que las partes tienen un deber de actuar conforme a la buena fe durante el periodo precon-tractual, nos hacemos eco de las palabras del ilustre trata-dista José María Manresa,(24) en cuanto a que no serán resarcibles los daños y perjuicios causados al ejercitar un derecho, pues, “ ‘el que usa de su derecho a nadie ofende’ ”. J.M. Manresa y Navarro, Comentarios al Código Civil español, 6ta ed. rev., Madrid, Ed. Reus, S.A., 1973, T. XII, pág. 852. El Juez Asociado Señor Estrella Martínez señala en su disenso que “[n]o es correcto expresar que en la etapa precontractual no existe ningún género de responsabi-lidad.” Opinión disidente del Juez Asociado Señor Estrella Martínez, pág. 105. Aclaramos que como bien enunciamos, el hecho de que las partes se puedan retirar de las nego-ciaciones no implica que ello pueda hacerse abusivamente y en violación de los postulados que emanan de la doctrina de la buena fe.
Así, pues, resolvemos que en causas de daños y perjuicios que se insten de acuerdo con la doctrina de responsabilidad por culpa in contrahendo, la medida de resarcimiento no puede incluir las ganancias que se hubiesen generado de haberse perfeccionado el contrato que se negociaba durante los tratos preliminares.
*71 i — i <¡
Por entender que la compensación en concepto de lucro cesante es disonante con el derecho de libertad contractual y con los principios de política pública que favorecen el tráfico jurídico, resolvemos que el Tribunal de Apelaciones erró al confirmar al TPI en cuanto a esta partida en particular. Por lo tanto, modificamos la sentencia apelada para eliminar de la partida de daños que debe pagar la peticionaria lo adjudicado por lucro cesante.

Se dicta sentencia de conformidad.

La Juez Asociada Señora Rodríguez Rodríguez emitió una opinión disidente, a la cual se unió el Juez Presidente Señor Hernández Denton. A su vez, el Juez Asociado Señor Estrella Martínez emitió una opinión disidente.
— O —

 Antes conocida como la “Corporación de Crédito y Desarrollo Comercial Agrí-cola de Puerto Rico”, entidad subsidiaria del Banco de Desarrollo y que luego se convirtió en la Corporación Pública para el Desarrollo de las Exportaciones, también conocida como Promoexport. Posteriormente, esta cambió su nombre a Corporación para el Desarrollo de las Exportaciones, adscrita al Departamento de Desarrollo Económico y Comercio de Puerto Rico, actualmente conocida como “Compañía de Comercio y Exportación”. Véase Determinación de hechos número 2 de la Sentencia apelada, Apéndice de la Petición de certiorari, pág. 821.

 La “zona libre de comercio” opera según una ley federal que provee incentivos para compañías de manufactura y movimiento de carga a través de controles de la aduana federal. íd., pág. 824.

 Según surge del expediente, Puerto Rico Freight Systems (PRFS) sería la única arrendadora del “edificio 15”, razón por la cual tuvo que atemperar la infraes-tructura del edificio para que se ajustara a las necesidades de un solo arrendatario.

 También se presentaron unas acciones por interferencia torticera de con-trato, libelo e incumplimiento de contrato de arrendamiento con respecto al “edificio 11”. De estas causas de acción, las primeras dos se declararon “no ha lugar”.

 El Tribunal de Primera Instancia (TPI) valoró los daños económicos relacio-nados con el “edificio 15” en $3,599,071. Determinó que de esa cantidad, la peticio-naria debía pagar el ochenta por ciento, para un total de $2,879,256.80 (a esa partida le añadió $757.38 relacionados con la causa de incumplimiento contractual respecto al “edificio 11”). Esa distribución del daño surge porque en la demanda, PRFS tam-bién solicitó daños económicos por cierto dinero que invirtió en la preparación de un manual para operar la “zona libre”. Acorde con sus alegaciones, las agencias federa-les pertinentes no aprobaron el manual debido a la negligencia de la peticionaria. Recordemos que en la estipulación, el señor Padilla consignó su interés de conver-tirse en operador de la “zona libre”. Sin embargo, en cuanto a esa reclamación en particular, el TPI entendió que PRFS incurrió en un veinte por ciento de negligencia. Id., págs. 730-731.

 En específico, la peticionaria señaló que el TPI erró al
“1. no aplicar la doctrina de impedimento colateral por sentencia y permitirle a la demandante apelada litigar nuevamente el contenido de la estipulación y al fallar de manera distinta a lo resuelto mediante sentencia final y firme en un pleito anterior.
“2. apreciar y aquilatar la prueba, negarse a desestimar la demanda bajo la Regla 39.2(c) de las de Procedimiento Civil y al conceder a la corporación deman-dante $218,481.00 por concepto de gastos incurridos en la consecución de un contrato de arrendamiento, mediando buena fe por parte de la CCE, y una partida millonaria en concepto de “lucro cesante” y/o “ganancias dejadas de percibir” basado en que la Compañía de Comercio y Exportación incurrió en culpa in contrahendo, y
“3. conceder intereses pre sentencia y honorarios de abogado sin haber mediado una determinación expresa de temeridad por parte de la Compañía de Comercio y Exportación!,] y a pesar de que esta logró la desestimación de dos de las cuatro causas de acción de la demandante-apelada por ausencia de prueba bajo la regla 39.2(c) de las de Procedimiento Civil”. Apéndice de la Petición de certiorari, págs. 89-90.

 El Art. 1802 del Código Civil de Puerto Rico dispone que “[e]l que por acción u omisión causa daño a otro, interviniendo culpa o negligencia, está obligado a repa-rar el daño causado. La imprudencia concurrente del perjudicado no exime de res-ponsabilidad, pero conlleva la reducción de la indemnización”. 31 L.P.R.A. sec. 5141. Por su parte, el Art. 1803 atiende la responsabilidad de los dueños o directores de un establecimiento por los daños causados por sus dependientes o agentes. 31 L.P.R.A. sec. 5142. El Art. 1059 apunta que “[l]a indemnización de daños y peijuicios com-prende no sólo el valor de la pérdida que haya sufrido, sino también el de la ganancia que haya dejado de obtener el acreedor, salvas las disposiciones contenidas en las secciones siguientes”. 31 L.P.R.A. sec. 3023.

 María García Rubio, anotando a G. Faggella, nos expone que durante el periodo de preparación de todo contrato se deben distinguir tres momentos: un primer periodo de elaboración o momento preformativo de la oferta; un segundo periodo de perfeccionamiento o de concreción de la propuesta, y un tercer periodo, que el autor italiano denomina “momento operativo” o de puesta en movimiento de la oferta. M. García Rubio, La responsabilidad precontractual en el Derecho español, Madrid, Ed. Tecnos, 1999, pág. 31 (citando a G. Faggella, Dei periodi precontrattualli e della loro vera esatta construzione scientifica, Studi giuridici in onore de Carlo Fadda, Nápoles, 1906, T. III, págs. 271 y siguientes).

 Como paréntesis, es importante puntualizar que la doctrina y la jurispruden-cia diferencian la etapa preparatoria de las figuras jurídicas del precontrato y de la oferta. Por un lado, los actos preparatorios de un contrato no se pueden confundir con un precontrato, ya que no producen una verdadera vinculación de naturaleza contractual. Véase A. Román García, El precontrato: estudio dogmático y jurispru-dencial, Ed. Montecorvo, S.A., 1982, págs. 364 y 373-374. Véase, también, J. Santos Briz, La contratación privada: sus problemas en el tráfico moderno, Madrid, Ed. Montecorvo, 1966, pág. 100. El precontrato es considerado como un contrato inde-pendiente con su propia identidad y significación. Román García, op. cit., pág. 94. Véanse, además: Jordán-Rojas v. Padró-González, 103 D.P.R. 813 (1975); Rossy v. Tribunal Superior, 80 D.P.R. 729 (1958). Por otra parte, la oferta de contrato no es —en modo alguno— un acto preparatorio de contrato, ya que esta es, en sí misma, una declaración contractual. E.A. Sánchez Urite, La oferta de contrato: fuerza vin-culante, Argentina, Ed. Abeledo-Perrot, 1975, pág. 33. La oferta debe reunir todos los elementos necesarios para que se pueda perfeccionar el contrato, de manera que la prestación del consentimiento sea suficiente para que este nazca a la vida jurídica. La importancia de dicha diferenciación reside en el tratamiento que recibe la respon-sabilidad que surge de acuerdo con la manera como las partes actúen durante cada una esas etapas. Se deduce que no todas reciben un trato unívoco.

 Citando a J. Puig Brutau, Fundamentos de Derecho Civil, 2da ed., Barcelona, Ed. Bosh, 1978, T. II, Vol. I, pág. 226.

 Luis Diez-Picazo entiende que “[l]a posibilidad de retirarse de los tratos o abandonar unas negociaciones no constituye [un] derecho subjetivo en sentido téc-nico, del que se pueda abusar por ejercitarlo en forma extralimitada. No es más que *56 un reflejo de la libertad, específicamente de la libertad contractual”. L. Diez-Picazo y otros, Fundamentos del derecho civil patrimonial, 6ta ed., Pamplona, Ed. Thomson Civitas, 2007, pág. 341.

 Véanse las anotaciones históricas de García Rubio, op. cit., pág. 27.

 Como nos ilustra María García Rubio, esta buena fe precontractual de-pende, en parte, de la naturaleza de la relación jurídica y la finalidad que persigan las partes a través de ella. íd., pág. 43. Nos dice esta autora que entre los deberes típicos de la fase precontractual se encuentran los de información, lealtad y protección. Id. Añade que no es menester asegurar que todos los deberes menciona-dos aparezcan conjuntamente en todos los supuestos de culpa in contrahendo, sino que cada uno de ellos suele ser característico de una determinada hipótesis de res-ponsabilidad precontractual, aunque a veces esta responsabilidad puede configurar la violación de varios deberes. Id.

 Ya desde principios del siglo pasado, Gabrielle Faggella había estimado que desde este primer periodo preparatorio era posible la responsabilidad *57 precontractual. Según su criterio, en ese lapso de tiempo existe entre las partes una autorización tácita a tratar que, a pesar de que no se puede considerar un contrato en sí, genera la confianza de que se perseverará hasta un acuerdo final o hasta que se derive que el convenio no es posible. Esto significa que la ruptura de los tratos preliminares, en caso de retirada intempestiva, genera la obligación de resarci-miento por los gastos efectuados por la otra parte. García Rubio, op. cit., pág. 32.

 José Manuel Lete Del Río señala que lo más acertado es la atención al caso concreto y la huida de calificaciones apriorísticas (contractuales o extracontractua-les) que, según dice, no sirven para resolver los problemas prácticos planteados por *58 las negociaciones frustradas o el contrato viciado. J.M. Lete Del Río, Derecho de obligaciones, Navarra, Ed. Thomson Aranzadi, 2010, Vol. 1, págs. 490-491.

 B. Moreno Quesada, La oferta de contrato, Barcelona, Colección Nereo, 1963, pág. 46.

 En cuanto a los gastos incurridos en las negociaciones, Moreno Quesada opina que:
“Resulta de suma importancia la determinación en cada caso de si efectiva-mente los gastos, estudios, y en general, las actividades que constituyen el contenido propio de las negociaciones previas, están justificados por la aprobación de la otra parte, que ha podido intervenir directamente tomando la iniciativa al encargar su realización, o bien de un modo menos directo, asintiendo a los que va a realizar la otra parte. Y decimos que es de interés fijar con claridad este extremo, porque pre-cisamente uno de los presupuestos de la exigencia de responsabilidad preliminar, es que los incursos en ella hubiesen alentado el comienzo o la continuación de los gastos que van a hacerla nacer, creando en las personas que los realizan un estado de ánimo de confianza en la trascendencia de las negociaciones y la fundada esperanza de que por su transcurso obtendrá unos resultados con los que compensar los desembolsos o actividades que realice, o que si el éxito no las corona se deberá a la imposibilidad de llegar a unos acuerdos dada la incompatibilidad de las posturas de las partes negociadoras”. Moreno Quesada, op. cit., pág. 47.

 Cabe destacar que como contraparte al interés negativo, existe también el interés positivo, que es el llamado “interés de cumplimiento” o “interés de la ejecu-ción de un contrato”. El interés negativo está determinado por la falta de validez o por la frustración del contrato, también llamado “interés de confianza”. Diez-Picazo, Fundamentos de derecho civil patrimonial, op. cit., pág. 325.

 Téngase presente que para poder obtener esta compensación, es necesario que el reclamante establezca que las actuaciones del demandado ocasionaron la interrupción y el cese de sus ingresos. S.L.G. Rodríguez v. Nationwide, 156 D.P.R. 614, 624 (2002).

 El Art. 1077 dispone, en parte, que “[l]a facultad de resolverlas obligaciones se entiende implícita en las recíprocas, para el caso de que uno de los obligados no cumpliere lo que le incumbe.
“El perjudicado podrá escoger entre exigir el cumplimiento o la resolución de la obligación, con el resarcimiento de daños y abono de intereses en ambos casos. Tam-bién podrá pedir la resolución, aun después de haber optado por el cumplimiento, cuando éste resultare imposible”. 31 L.P.R.A. sec. 3052.

 Según nos expone María García Rubio, los daños emergentes son los gastos derivados del desarrollo de los tratos truncados, como viajes, asistencia legal e in-versiones efectuadas con vista a exigir o recibir la prestación frustrada, tales como obras de acondicionamiento, entre otras. García Rubio, op. cit., pág. 233.

 La autora, citando a L. Diez-Picazo, La existencia del contrato, AAMN, núm. 39, pág. 190 (2009), nos indica que este autor “afirma que aunque se trate de una cuestión discutida y no bien resuelta, ha de entenderse que como consecuencia de la negociación emprendida, hubiera perdido otra ocasión mas ventajosa de contratar”.

 Véase Moción de desistimiento por estipulación de las partes, Apéndice de la Petición de certiorari, pág. 2151.

 En sus comentarios al Art. 1.902 del Código Civil español, análogo al Art. 1802 del nuestro, supra.